IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

    Appellee,

v.                                                                         Criminal Action No. 3:17cr16

**GEORGE JOYNER,**

    Appellant.

## MEMORANDUM OPINION

This matter comes before the Court on Appellant George Joyner's Appeal of the Magistrate Judge's Decision to the District Court (the "Appeal"). (ECF No. 9.) Joyner filed a brief in support of the Appeal, (ECF No. 11), the United States responded, (ECF No. 22), and Joyner replied, (ECF No. 23). The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to Federal Rule of Criminal Procedure 58(g)(2)(B).[1] For the reasons that follow, the Court will affirm Joyner's conviction and dismiss the Appeal.

### I. Procedural Background

On January 31, 2017, the Honorable David J. Novak, United States Magistrate Judge, convicted Joyner of reckless driving under 38 C.F.R. § 1.218(b)(33).[2] Judge Novak imposed the

---

[1] Rule 58(g)(2)(B) allows a defendant to "appeal a magistrate judge's judgment of conviction or sentence to a district judge within 14 days of its entry. To appeal, the defendant must file a notice with the clerk specifying the judgment being appealed and must serve a copy on an attorney for the government." Fed. R. Crim P. 58(g)(2)(B).

[2] 38 C.F.R. § 1.218 governs security and law enforcement at Department of Veterans Affairs ("VA") facilities. Subsection (b) provides a "[s]chedule of offenses and penalties" that "subject[] an offender to arrest and removal from the premises," a fine as set forth for each

minimum penalty: a $30 Central Violations Bureau ("CVB") processing fee and a $5 Special Assessment as penalty. Joyner noted his appeal from the conviction the same day, and timely filed his brief in support. Joyner argues that his conviction should be overturned because the magistrate judge incorrectly found the police officer who testified against Joyner credible, and because Joyner's actions did not constitute reckless driving in violation of 38 C.F.R. § 1.218 (b)(33).

## II. Federal Rule of Criminal Procedure 58(g)(2)(B) Standard

Pursuant to Federal Rule of Criminal Procedure 58(g)(2)(B), a defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within fourteen days of its entry. Fed. R. Crim P. 58(g)(2)(B). "An appellate review conducted by a district court after a bench trial before a magistrate judge is not a trial de novo; rather, the district court utilizes the same standards of review applied by a court of appeals in assessing a district court conviction." *United States v. Bursey*, 416 F.3d 301, 305 (4th Cir. 2005) (citing Fed. R. Crim. P. 58(g)(2)(D)). The district court reviews the magistrate judge's findings of fact for clear error, and reviews the legal determinations, such as interpretations of statutes and regulations, de novo. *Id.* (citing *United States v. Leftenant*, 341 F. 3d 338, 342–43 (4th Cir. 2003)). The district court must assess a defendant's challenge to the "sufficiency of the evidence by viewing it—including all reasonable inferences to be drawn therefrom—in the light most favorable to the [United States]." *Id.* at 306 (citing *United States v. Pasquantino*, 336 F.3d 321, 332 (4th Cir. 2003) (en banc)). A district court must affirm the conviction if "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Uzenski*, 434 F.3d

---

penalty, and the possibility of "a term of imprisonment of not more than six months." 38 C.F.R. § 1.218(b).

38 C.F.R. § 1.218(b)(33), under which Joyner was convicted, provides in full: "Operation of a vehicle in a reckless or unsafe manner, too fast for conditions, drag racing, overriding curbs, or leaving the roadway, $100." 38 C.F.R. § 1.218(b)(33).

690, 700 (4th Cir. 2006) (quoting *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002)). The determination of credibility of witnesses lies in the exclusive domain of the fact-finder and is not subject to judicial review. *See Lomax*, 293 F.3d at 705.

### III. Facts

The record before the magistrate judge consisted of testimony from Officer Vincent Marcellino, a police officer with the VA, testimony from Joyner, and five defense exhibits: ten pictures of the area around the entrance of the VA's McGuire Medical Center in Richmond, Virginia (the "Medical Center").

#### A. Officer Marcellino's Testimony

Officer Marcellino testified that, on the morning of September 27, 2016, he was monitoring traffic in a marked vehicle near the entrance of the Medical Center. Officer Marcellino stated that he was familiar with the traffic patterns at the VA at that time of day. According to the officer, most of the appointments at the VA are between eight and ten in the morning, and at that time "[t]here's a huge traffic flow, very congested, very busy, several vets in and out." (Tr. 9, ECF No. 21.) The congestion at that time of day consists of both vehicle and pedestrian traffic, and people regularly utilize a bus stop in the area during those hours.

At approximately 9:30 a.m., Officer Marcellino witnessed a black Toyota Camry, which he later learned was driven by Joyner, approach the entrance of the Medical Center. Officer Marcellino testified that he saw Joyner make "a U-turn in the middle of the street hopping the curb, which is part of the sidewalk, and then head[] back towards the main entrance of the VA." (*Id.* at 6.) Officer Marcellino further stated that Joyner "hop[ped]" the brick sidewalk curb in front of the bus stop, and "head[ed] back toward the main . . . intersection," where he "r[an a]

3

stop sign, ma[de] another U-turn[,] and head[ed] back towards [Officer Marcellino] down the same road." (*Id.* at 7–8.)

After Joyner passed Officer Marcellino, the officer "activated [his] overhead emergency lights, and conducted a traffic stop." (*Id.* at 9.) Officer Marcellino spoke with Joyner, telling Joyner that he stopped him "for reckless driving, explaining the situation, what [the officer] witnessed." (*Id.* at 10.) Officer Marcellino testified that Joyner "became very upset and argumentative[,] stating that he did not believe that those were classified as reckless driving movements." (*Id.*) Officer Marcellino issued Joyner a citation for violating 38 C.F.R. § 1.218(b)(33).

Officer Marcellino stated on cross-examination that the curb onto which Joyner drove "is a gradual slope up to an elevation." (*Id.* at 11.) He testified that, on the day he stopped Joyner, construction was occurring at the Medical Center approximately fifty meters from where Joyner made a U-turn.[3] Officer Marcellino further asserted that the construction would not have blocked the road in front of Joyner, but that "traffic is usually held up for people that are trying to . . . get into the valet lot" for the Medical Center. (*Id.* at 12–13.)

Joyner also had the following exchange with Officer Marcellino on cross-examination:

> Q: . . . [Y]ou were directing traffic, is that correct?
> 
> A: No, sir.
> 
> Q: You were in your vehicle.
> 
> A: Yes, sir.

(Tr. 13.)

---

[3] The record is unclear whether Officer Marcellino was referring to the first or second U-turn Joyner made.

B. <u>Joyner's Testimony</u>

Joyner testified that he went to the Medical Center for a medical appointment. He stated that it was raining, "[t]here was a large traffic jam, and people were stopped, people were turning, people were going by that long trail of traffic. . . ." (*Id.* at 15.) Joyner indicated that "[w]hen I made the U-turn, there is no elevation there whatsoever. It's just brick coming out even. . . . So there is no sidewalk there to jump." (*Id.* at 20–21.) He admitted that he made two U-turns, but asserted that "[t]here is no marking on the VA property there that says no U-turn, no place." (*Id.* at 21.) Joyner testified that "[t]here was enough room to make the U-turn, the traffic was stopped, and what I was trying to do is decide which way I was going to get to my appointment . . . ." (*Id.*) Joyner, however, disputed Officer Marcellino's testimony that he had failed to stop for the stop sign: "I stopped for the stop sign and then proceeded." (*Id.* at 26.)

Joyner also declared that "[i]t was a ball of confusion that day." (*Id.* at 24.) Joyner stated that, because of the construction, "[t]here was a bottleneck [in the traffic flow] that day. It's not normally there." (*Id.* at 25.) Joyner testified that, at the time he made the first U-turn,

> [t]here's other cars in front of me coming this way, there are other cars turning, and there are other cars trying to go straight. And then there's construction to the right.
>
> . . . .
>
> I decided to go around to the other side and see if I could find a parking space.
>
> . . . .
>
> And once I turned around, I realized that I had to go to the other end of the hospital, and so I said, I need to go back.
>
> . . . .
>
> And so I went there. I made the stop. I made the U-turn . . . .

(*Id.* at 23.)

In closing arguments, Joyner asserted that he "made two proper U-turns. There were . . . no markings to say there were no U-turns allowed in those areas. I did not run the stop sign, but I did make the two U-turns, and the two U-turns were legal U-turns. I did not run up on the sidewalk." (*Id.* at 29–30.)

### C. The Magistrate Judge's Findings

Judge Novak found that the United States had proven Joyner guilty of reckless driving beyond a reasonable doubt. The magistrate judge stated that he "believe[d] the police officer's testimony[,] which is the reason why [he] found [Joyner] guilty." (*Id.* at 31.) Judge Novak ruled that Joyner should not "be doing U-turns like that there whether there's a sign or not," and he sentenced Joyner to the minimum required sentence: a $30 CVB processing fee and a $5 special assessment fee. (*Id.* at 30.)

## IV. Analysis: The Court Will Affirm Joyner's Conviction

The Court will affirm Joyner's conviction because the magistrate judge's findings of fact were not clearly erroneous, and the magistrate judge correctly applied the relevant law. Moreover, the Court will not, as Joyner urges, disturb the lower court's finding that Officer Marcellino's testimony was credible.

### A. The Parties' Arguments

Joyner argues that the magistrate judge erred in finding him guilty of reckless driving, in part because "there are no signs posted informing drivers not to make [U]-turns on [the Medical Center] in any place near or around the area where [Joyner] was ticketed." (Joyner Br. 3, ECF No. 11.) He asserts that "[a]ccording to the Virginia Driver's Manual, . . . [U]-turns are allowed at intersections," and contends that he "would only be guilty of making an illegal [U]-turn if there were posted signs forbidding the making of [U]-turns." (*Id.* at 4–5.) In sum, according to Joyner, "making a [U]-turn, where there is no oncoming traffic, no pedestrians in the area, no

6

speeding, no out of control driving, [and] no risk to anyone, including the driver[,] does not amount to reckless driving." (*Id.*) He contends that "there was no evidence that support[s] a reckless driving conviction." (*Id.*)

The United States responds that Joyner's assertions regarding the legality of his U-turns have no relevance "because the statute under which [Joyner] was convicted does not require proof that [Joyner] violated any specific provision of (any state's) traffic code, but instead is concerned only with whether [Joyner] operated his vehicle in a 'reckless or unsafe manner.'" (U.S. Resp. 3, ECF No. 22.) According to the United States, "[w]hether or not a driver *could* legally execute a U-turn on the VA Medical Center is irrelevant—the question before the Magistrate Judge was whether the *manner* in which [Joyner] operated his vehicle on the morning of September 27 . . . was 'reckless or unsafe.'" (*Id.* at 3–4.)

### B. The Court Will Not Disturb the Magistrate Judge's Credibility Determinations

Joyner maintained before the magistrate judge, and asserts again before this Court, that he did not run the stop sign or drive on the sidewalk. Joyner also argues to this Court that the "officer gave false testimony by testifying that he was in a vehicle observing traffic." (Joyner Br. at 4.) Instead, Joyner contends, Joyner "plainly saw the officer standing in the rain at the entrance of the valet parking driveway." (*Id.*)

Whether Officer Marcellino testified credibly is not a question for this Court. Judge Novak explicitly stated that he "believe[d] the police officer's testimony." (*Id.* at 31.) The lower court's finding of credibility regarding Officer Marcellino is not subject to judicial review, and this Court will not disturb that finding. *See Lomax*, 293 F.3d at 705.

C. Sufficient Evidence Exists to Find that Joyner Violated § 1.218(b)(33)

The evidence, viewed in the light most favorable to the United States, was sufficient for a rational trier of fact to have found Joyner guilty of reckless driving under 38 C.F.R. § 1.218(b)(33). *See Uzenski*, 434 F.3d at 700. Accordingly, the Court will affirm Joyner's conviction and dismiss the Appeal.

Under § 1.218(b)(33), an individual who operates "a vehicle in a reckless or unsafe manner, [driving] too fast for conditions, drag racing, overriding curbs, or leaving the roadway" while at a VA facility is subject to "arrest and removal from the premises," a $100 fine, and "a term of imprisonment of not more than six months." 38 C.F.R. § 1.218(b)(33). The evidence before the magistrate judge, viewed in the light most favorable to the United States, was sufficient for a rational trier of fact to find that Joyner drove in a "reckless or unsafe manner" in violation of § 1.218(b)(33).

Officer Marcellino, whose testimony Judge Novak deemed credible, testified that he saw Joyner make one U-turn, during which Joyner drove over the curb and onto the sidewalk, and then "head[] back towards the main entrance of the VA." (Tr. at 6.) Officer Marcellino stated that he then saw Joyner "run[] [a] stop sign, make[] another U-turn[,] and head[] back . . . down the same road." (*Id.* at 7–8.) Moreover, both Officer Marcellino and Joyner testified that the area around the Medical Center at the time of the incident was busy and congested with people and cars. (*Id.* at 9, 22, 24.) Indeed, Joyner called it a "ball of confusion." (Tr. 24.) A rational trier of fact could readily find that executing two U-turns, driving over a curb, and failing to stop at a stop sign in an area congested with pedestrian and vehicular traffic amounts to "reckless or unsafe" driving. *See Uzenski*, 434 F.3d at 700; 38 C.F.R. § 1.218(b)(33). The Court will affirm Joyner's conviction.

## V. Conclusion

For the foregoing reasons, the Court finds that sufficient evidence supported Joyner's conviction for reckless driving in violation of 38 C.F.R. §1.218(b)(33). The Court will affirm Joyner's conviction and dismiss the Appeal. An appropriate Order shall issue.

It is so ORDERED.

/s/
M. Hannah Lauck
United States District Judge

Date: 2/13/18
Richmond, Virginia